UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO HARRISON and RAYCHELLE
WOOLFOLK, Individually,

                Plaintiffs,

     v.

MICHIGAN DEPARTMENT OF HEALTH
AND HUMAN SERVICES AND
DIRECTOR OF STATE HOSPITAL
ADMINISTRATION GEORGE MELLOS,
CFP HOSPITAL DIRECTOR ANDREA
VANDENBERGH, CFP CLINICAL
SERVICES DIRECTOR DR. TODD
MOORE, MEDICAL ADVISOR FOR THE
STATE HOSPITAL ADMINISTRATION
DR. CATHERINE REID, CFP HUMAN
RESOURCES DIRECTOR DIANE
MONTRI, and CFP DIRECTOR OF
SAFETY AND SECURITY LEON
BROADNAX, Individually and in their
official capacities,

                Defendants.

_____/

Case No. 22-cv-12034

Paul D. Borman
United States District Judge

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINITFFS' COMPLAINT (ECF NO. 13)

     This is an employment discrimination case arising out of Plaintiffs Antonio

Harrison's and Raychelle Woolfolk's employment with Defendant Michigan

Department of Health and Human Services (DHHS) as Forensic Security Assistants.

Plaintiffs assert claims against Defendant DHHS and several individual Defendants, in their official and individual capacities, for race discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 and the Michigan Elliott-Larsen Civil Rights Act, and a claim for violation of their procedural due process rights.

Now before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint. (ECF No. 13.) The motion has been fully briefed. The Court does not believe that oral argument will aid in its disposition of this matter; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

### A. Factual Background

#### 1. The parties

Plaintiffs Antonio Harrison and Raychelle Woolfolk were employed as Forensic Security Assistants (FSAs) with Defendant Michigan Department of Health and Human Services' (DHHS) Center for Forensic Psychiatry (CFP). (ECF No. 1, Compl. ¶¶ 7-8.) The CFP is a psychiatric hospital that provides diagnostic services

2

and psychiatric treatment for criminal defendants adjudicated incompetent to stand trial, or acquitted by a verdict of not guilty by reason of insanity. (*Id.* ¶ 3.)[1]

Plaintiffs Harrison and Woolfolk both began working at the CFP in January 2011. (*Id.* ¶¶ 7-8.) Plaintiffs allege that they have been discriminated against because of their race while employed at CFP. (*Id.* ¶ 10.)

Plaintiffs bring this lawsuit against DHHS and several individual Defendants: Dr George Mellos, DHHS Director of Hospital Administration; Andrea Vandenbergh, CFP Hospital Director; Dr. Todd Moore, CFP Clinical Services Director; Dr. Catherine Reid, DHHS Director of the Bureau of Medicaid Care; Diane Montri, CFP HR Director; and Leon Broadnax, Director of CFP Safety and Security. (*Id.* ¶ 4.)

## 2. Woolfolk's prior allegations of discrimination and EEOC charges

Plaintiff Woolfolk alleges that she was subjected to discriminatory treatment in January of 2017 when she was suspended without pay on a charge of patient neglect. (Compl., ¶ 11.a.) She was subsequently cleared of the patient neglect charge, and she filed a charge of discrimination with the Equal Employment Opportunity

---

[1] *See* MDHSS CFP website at https://www.michigan.gov/mdhhs/keep-mi-healthy/mentalhealth/mentalhealth/mentalillness/state-operated-hospitals/center-for-forensic-psychiatry [https://perma.cc/M6UF-NTVT].

Commission (EEOC), Charge No. 471-2017-02525, alleging that she was suspended because of her race. (*Id.*)[2]

Woolfolk next alleges that a white employee using the pseudonym "Jahn Doe" obtained Woolfolk's emails on November 29, 2017, and February 15, 2018, and with the help of other white employees at CFP distributed those "emails with personal notes throughout the CFP," including placing copies in the mailboxes of three RN Supervisors (Terri Ferguson, Martin Woods, and Deb Hawker). (*Id.* ¶ 11.b, c.) Plaintiffs plead that RN Ferguson falsely claimed that Woolfolk did this to threaten them. (*Id.*) Woolfolk alleges that, as a result, she was placed on administrative leave on April 27, 2018 "pending investigation for possible work rule violations regarding the note attached to the email," but that she was returned to work on May 26, 2018, when "the investigation was unsubstantiated." (*Id.* 11.d.) Woolfolk then filed a second charge of discrimination, EEOC Charge No. 471-2018-02829, alleging race discrimination and retaliation for filing her prior EEOC charge. (*Id.*)[3]

---

[2] Plaintiffs attached a copy of the 2017 EEOC charge as Exhibit C to their Response brief. (ECF No. 15-4, Woolfolk 2017 EEOC Charge.)

[3] A copy of the 2018 EEOC Charge is attached to Plaintiffs' Response brief at Ex. B. (ECF No. 15-3, Woolfolk 2018 EEOC Charge.)

Woolfolk's 2017 and 2018 EEOC Charges were substantiated, and the EEOC issued a Conciliation Agreement on July 25, 2019. (*Id.* ¶ 12.)[4] Plaintiffs state that the Conciliation Agreement ordered DHHS to: (a) remove the last four disciplinary actions against Woolfolk and not use such actions for future disciplinary progression; (b) pay Woolfolk $3,000.00 in compensatory damages; (c) allow Woolfolk to seek Employee Assistance Program counseling during working hours not to exceed twice weekly; (d) make available the results of the EEOC's investigation to all parties associated with the disciplinary actions; (e) conduct a formal assessment into systemic racism; (f) mandate all managers, supervisors, leads, and human resources staff at CFP to participate in a diversity/bias test; (g) provide training to all managers, supervisors, leads, and human resource staff at CFP with appropriate race/national origin training on Title VII of the Civil Rights Act of 1964, specifically on race/national origin discrimination and retaliation related to complaints of race/national origin discrimination; and (h) post the required Notice. (*Id.* ¶ 12.)

On January 29, 2020, Defendant Vandenbergh issued the following email notice to the CFP employees:

---

[4] A copy of the July 25, 2019, Conciliation Agreement is attached to Plaintiffs' Response brief at Ex. D. (ECF No. 15-5, 2019 Conciliation Agreement.)

> As you know, the Center has had difficulties in the recent past in terms of discriminatory harassment and EEOC substantiated complaints. We have been working to improve upon these past issues as we want to have a hospital culture that is healthy and safe for all of our staff to work in. There are great people working at the CFP and we provide excellent care to patients. As mentioned before, 2020 will be our time to get training at all levels to provide us with guidance to build a culture that will promote the best opportunity for staff to be supported and function to their highest extent. Lansing and CFP leadership is committed to developing this type of culture and have consulted with numerous resources, both internally and externally.

(*Id.* ¶ 13.)

### 3. Plaintiffs' terminations from CFP

On August 25, 2020, Harrison's employment with CFP was suspended for engaging in a physical altercation with a CFP psychiatric patient, S.B., on August 23, 2020. (Compl. ¶ 15.m.) Plaintiffs allege that Harrison had properly restrained S.B., a white patient who had spat in Harrison's face and called Plaintiffs "N*****s." (*Id.*) Defendant Broadnax also filed a criminal complaint against Harrison with the Michigan State Police on August 23, 2020, but the charges were later "dropped by the Washtenaw County Prosecutor's Office." (*Id.* ¶ 15.k.) On October 6, 2020, Harrison's employment with CFP was terminated for engaging in the physical altercation with CFP psychiatric patient S.B. on August 23, 2020. (*Id.* ¶ 15.m.)

6

On December 14, 2020, Woolfolk's employment with CFP was terminated, after an investigation found that Woolfolk "did not correctly prepare an Incident Report" about Harrison's altercation with the psychiatric patient, S.B., on August 23, 2020. (Compl. ¶ 14.f.)

### 4. Plaintiffs' EEOC charges

On March 2, 2021, Woolfolk and Harrison separately filed EEOC charges on their terminations. (Compl. ¶ 16.) (ECF No. 13-2, Woolfolk 2021 EEOC Charge No. 471-2021-00800) (ECF No. 13-3, Harrison 2021 EEOC Charge No. 471-2021-00043.)

On Woolfolk's EEOC charge, Charge No. 471-2021-00800, she checked the boxes for "race" and "retaliation" discrimination, with both the "earliest" and "latest" date of discrimination of December 14, 2020 (the date of her termination). Woolfolk did not indicate that this was a "continuing action," and her Charge states:

> I began working for the above-named employer on January 9, 2011, and my previous position title was F.S.A. E10.
>
> On December 14, 2020, I was discharged for patient neglect. I deny the allegation. I am aware of similarly situated White employees who were not treated in the same manner; only disciplined. I filed a charge of discrimination EEOC Charge No.: 471-2017-2525, in June 2017 and a retaliation related charge EEOC Charge No.: 471-2018-02829. I prevailed in both charges. I am aware that at least 5 Black employees have complained of discrimination who were disciplined in the same manner as me.

I believe I was discharged because of my race, Black, and in retaliation for filing charges of discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended. I further believe, I and other Black employees are subjected to discipline and discharge at a higher rate than our White counterparts which subjects Black employees to disparate treatment due to race, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(ECF NO. 13-2, Woolfolk 2021 EEOC Charge.)

Harrison similarly checked the boxes for "race" and "retaliation" discrimination on his EEOC charge, Charge No. 471-2021-00043, with the earliest date of discrimination of February 3, 2020 (the date of a prior EEOC charge by Harrison), and the latest date of discrimination of October 6, 2020 (Harrison's termination date). Harrison did not indicate that this was a "continuing action," and his Charge states:

[I] began working for the above-named employer about January 9, 2011. I was employed as a Forensic Security Aid [sic].

On October 6, 2020, I was discharged for patient abuse. I deny the allegation. I have filed numerous charges of discrimination; EEOC Charges 471-2020-03382, 471-2020-01694 in 2020. I am aware of several White employees that have been charged with patient abuse that only received discipline – no discharge or they were not charged with patient abuse.

I believe I was discharged due to my race, Black and in retaliation for complaining of discrimination and I believe that I and other Black employees are disciplined and discharged at a much higher rate than

our White counterparts resulting in disparate treatment, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(ECF No. 13-3, Harrison 2021 EEOC Charge.)

Both Plaintiffs received right to sue letters on June 6, 2022. (Compl. ¶ 16.)

### 5.  Plaintiffs' union grievances and arbitration

Plaintiffs Harrison and Woolfolk both grieved their terminations through the Michigan Corrections Officers Union (MCO), and the grievances were part of an ongoing arbitration at the time Plaintiffs initiated this action, with arbitration hearing dates set for September 15, 2022, and November 7, 2022. (Compl. ¶¶ 17-18.) The parties have not provided any further update in their briefing before the Court.

### B.  Procedural Background

Plaintiffs filed their Complaint on August 30, 2022, alleging the following Counts against DHHS and all individual Defendants, individually and in their official capacities: Count I – Race discrimination, hostile work environment, and retaliation claims under both Title VII of the Civil Rights Act of 1964, and the Michigan Elliott-Larsen Civil Rights Act (ELCRA); and Count II –Violation of Plaintiffs' procedural due process rights with respect to their terminations. Plaintiffs seeks front and back pay, compensatory and punitive damages, costs, attorney's fees, and "other relief deemed just and necessary." (ECF No. 1, Compl.)

9

Defendants filed the instant Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (ECF No. 13, Defs.' Mot.) Defendants seek dismissal with prejudice of Plaintiffs Harrison's and Woolfolk's claims, or alternatively, if the Court does not dismiss Harrison's claims, Defendants request that this Court abstain from exercising jurisdiction over the claims until there is a final decision of the Michigan Worker's Disability Compensation Agency (WDCA) on Harrison's pending workers compensation claim.

Plaintiffs have filed a Response brief in opposition to Defendants' motion to dismiss. (ECF No. 15, Pls.' Resp.) Plaintiffs assert that they have stated valid claims against all Defendants, and they request that the Court deny Defendants' motion to dismiss in its entirety.

Defendants filed a Reply brief in support of their motion to dismiss, reasserting their request for dismissal of all of Plaintiffs' claims with prejudice. (ECF No. 23, Defs.' Resp.)

## II. STANDARDS OF REVIEW

### A. Fed. R. Civ. P. 12(b)(1)

When defendants seek to dismiss an action under Rules 12(b)(1) and 12(b)(6), the Court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6)

challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Under a facial attack to the sufficiency of the pleadings, as in this case, all of the allegations in the complaint must be taken as true, much as with a Rule 12(b)(6) motion. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A factual attack, by contrast, disputes facts alleged in a complaint that support subject-matter jurisdiction. *Id.* In that instance, there is no presumptive truthfulness. *Id.* Rather, the Court "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Id.* Rule 12(b)(1) challenges raising immunity may present either facial or factual attacks. *See Hatcher v. United States*, 855 F. Supp. 2d 728, 731 (E.D. Tenn. 2012), *aff'd*, 512 F. App'x 527 (6th Cir. 2013).

Under a Rule 12(b)(1) motion, the plaintiff bears the burden of proving subject matter jurisdiction. *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021) ("[T]he party asserting federal jurisdiction when it is challenged has the burden of establishing it.") (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3

11

(2006)). However, "the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, *i.e.*, that it is an arm of the state." *Lowe v. Hamilton Cnty. Dep't of Jobs & Family Servs.*, 610 F.3d 321, 324 (6th Cir. 2010) (quoting *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002).

### B. Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id*. at 539 (internal citations and quotation marks

omitted); *see also Electronic Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. Jan. 30, 2023) ("[T]he court does not have to accept as true 'unwarranted factual inferences.'") (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008)). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir.

2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings…. [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings).

### III.   ANALYSIS

**A. Eleventh Amendment Immunity Bars Plaintiffs' ELCRA and Federal Due Process Claims Against DHHS and the Individual Defendants in Their Official Capacities**

In Count I of their Complaint, Plaintiffs assert state law claims of race discrimination, retaliation, and hostile work environment under Title VII and Michigan's ELCRA, Mich. Comp. Laws § 37.2101, *et seq.* against all Defendants.

14

In Count II, Plaintiffs assert a claim against all Defendants for violation of their procedural due process rights with respect to the termination of their employment. Defendants argue that the state law ELCRA claims and Fourteenth Amendment due process claims are barred by Eleventh Amendment immunity as to Defendant state agency, DHHS, and as to the individual Defendants sued in their official capacities.

Plaintiffs did not address this argument in their Response brief opposing Defendants' motion to dismiss, and the Court finds that Plaintiffs therefore have effectively conceded these issues and abandoned their state law ELCRA and federal due process claims against DHHS and against the individual Defendants in their official capacities. *See Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007) (stating that the district court "correctly noted ... that [plaintiff] abandoned [certain] claims by failing to raise them in his brief opposing the government's motion to dismiss the complaint"); *PNC Bank, Nat'l Ass'n v. Goyette Mech. Co.*, 88 F. Supp. 3d 775, 785 (E.D. Mich. 2015) ("A plaintiff abandons undefended claims."); *Mekani v. Homecomings Fin., LLC,* 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010) (stating that where a plaintiff fails to respond to an argument in a motion to dismiss, "the Court assumes he concedes this point and abandons the claim").

But even considering the merits of the arguments asserted by Defendants, the Court finds that Plaintiffs' state law ELCRA and federal due process claims against

15

DHHS and the individual Defendants in their official capacities are barred by Eleventh Amendment immunity.

The Eleventh Amendment to the United States Constitution provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. This immunity extends to suits brought by citizens against their own states. *See, e.g., Ladd v. Marchbanks*, 971 F.3d 574, 578 (6th Cir. 2020) (citing *Hans v. Louisiana*, 134 U.S. 1, 18-19 (1890)). It also extends to suits against state agencies or departments, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citations omitted), and "suit[s] against state officials when 'the state is the real, substantial party in interest[,]'" *id.* at 101 (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613 (2002)). *See also Tincher v. Owsley*, 500 F. App'x 468, 472 (6th Cir. 2012) (stating that the Eleventh Amendment "applies to suits brought against a state agency or state officers, and the action is for recovery of money from the state treasury.") (citing *Martin v. Univ. of Louisville*, 541 F.2d 1171, 1173-74 (6th Cir. 1976)).

Eleventh Amendment immunity is subject to three exceptions: (1) congressional abrogation; (2) waiver by the State; and (3) "a suit against a state official seeking prospective injunctive relief to end a continuing violation of federal law." *See Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002) (citations omitted). Thus, [u]nless a State has waived its Eleventh Amendment immunity or Congress has overridden it … a State cannot be sued directly in its own name regardless of the relief sought." *Cady v. Arenac Cnty.*, 574 F.3d 334, 344 (6th Cir. 2009); *see also Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (explaining that "the ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court").

"The State of Michigan has not consented to being sued in civil rights actions in the federal courts," *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004), and the Sixth Circuit Court of Appeals has stated that passage of the ELCRA did not waive Michigan's Eleventh Amendment immunity from suit in federal court. *Freeman v. Michigan*, 808 F.2d 1174, 1179 (6th Cir. 1987) (explaining that Michigan's enactment of the ELCRA did not operate to waive the state's Eleventh Amendment immunity because it did not "establish that [the state] has agreed to become a defendant in federal court suits based on violations of either state or federal

17

law.").[5] Thus, ELCRA claims may be brought against Michigan, but only in state court, not in federal court. *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005) (observing that "the States' constitutional [Eleventh Amendment] immunity from suit prohibits *all* state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature."); *Hawthorne-Burdine v. Oakland Univ.*, 158 F. Supp. 3d 586, 598 (E.D. Mich. 2016) (holding that an ELCRA action may not be brought in federal court despite statutory consent to suit in state court). Plaintiffs' state law ELCRA claims against Defendant DHHS, a state agency, therefore are barred by the Eleventh Amendment and must be dismissed.

Moreover, because a plaintiff's state law claim against an individual state official defendant in his or her official capacity is really a claim against the state that is protected by the Eleventh Amendment, Plaintiffs' ELCRA claims against the individual Defendants in their official capacities are also barred by the Eleventh Amendment and must be dismissed. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 106 ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the state that is protected by the Eleventh Amendment."); *Ernst*, 427 F.3d at 358 (stating that Eleventh Amendment immunity

---

[5] The Eleventh Amendment does not preclude a federal court action against a state under Title VII. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

extends to claims in a suit that are brought "against state officials sued in their official capacity for money damages"); *see also Lewis v. Clarke*, 581 U.S. 155, 162 (2017) ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself.").[6]

In addition, Plaintiffs' Fourteenth Amendment procedural due process claim in their Complaint, based on their asserted property interest in their continued employment with the State of Michigan and seeking money damages, is likewise barred against DHHS and the individual Defendants in their official capacities by the Eleventh Amendment. *See Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (plaintiff's constitutional violation claims against the State of Michigan, the Michigan Department of Corrections, and the Michigan Parole Board were barred by the Eleventh Amendment); *see also Al-Janabi v. Wayne State Univ.*, No. 21-1399,

---

[6] The Eleventh Amendment does not bar actions against state officials in their official capacities seeking prospective injunctive relief *for violations of federal law*. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159-160 (1098); *Ernst*, 427 F.3d at 358 (observing that a state's Eleventh Amendment immunity "does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law"). The *Ex parte Young* exception, however, does not apply to *state law claims* against state officials, regardless of the relief sought. *See In re Ohio Execution Protocol Litig.*, 709 F. App'x 779, 787 (6th Cir. 2017) ("If the plaintiff sues a state official under state law in federal court for actions taken within the scope of his authority, sovereign immunity bars the lawsuit regardless of whether the action seeks monetary or injunctive relief.").

2021 WL 8264677, at *2 (6th Cir. Dec. 15, 2021) ("[T]o the extent that Al-Janabi's complaint can be construed as asserting due-process and equal-protection claims under the Fourteenth Amendment, such claims likewise are barred."); *Tincher*, 500 F. App'x at 472 (holding that the Eleventh Amendment barred procedural due process claims against the state university and state university officials in their official capacities arising from plaintiff's termination).

However, "neither the Eleventh Amendment nor *Pennhurst* deprives federal courts of jurisdiction over state law claims for [money] damages against state officials in their *individual* capacities." *See Williams v. Kentucky*, 24 F.3d 1526, 1543 (6th Cir. 1994) (emphasis added) (holding that the Eleventh Amendment bars a plaintiff's state law claims to "insofar as they seek [prospective] injunctive relief," but not plaintiff's claims against defendants in their individual capacities for money damages); *but see Koch v. Dep't of Nat. Res.*, 858 F. App'x 832, 835-36 (6th Cir. 2021) (recognizing that while there is "some disagreement in this Circuit as to whether sovereign immunity stretches so far" as to bar state-law claims for monetary relief against individual officers sued in their personal capacities, finding that "sovereign immunity does not bar [plaintiff's] state-law claims for monetary relief against the individual officers in their personal capacities"). Further, as discussed below, the ELCRA imposes individual liability on an employer's agents. Mich.

20

Comp. Laws § 37.2201(a); *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 425 (2005). Thus, to the extent Plaintiffs sufficiently plead personal capacity claims seeking monetary damages against the individual Defendants in their personal capacity, the Court finds that those claims are not barred by the Eleventh Amendment.[7]

Therefore, Plaintiffs' ELCRA and federal procedural due process claims against DHHS and against the individual Defendants sued in their official capacities are dismissed as barred by the Eleventh Amendment. *See Kanuszewski v. Michigan Dep't of Health & Human Servs.*, 927 F.3d 396, 413 (6th Cir. 2019) (holding that plaintiffs are barred by the Eleventh Amendment from seeking damages from MDHSS or any individual defendants sued in their official capacity).

---

[7] The United States Supreme Court has explained the difference between personal-capacity and official-capacity suits:

> Personal-capacity suits seek to impose liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Kentucky*, 473 U.S. at 165-66 (citations and quotation marks omitted).

This leaves only Plaintiffs' ELCRA claims against the individual Defendants, sued in their personal capacities, and Plaintiffs' Title VII claims against all Defendants, for the Court to consider.

**B. Plaintiffs Cannot State a Title VII Claim Against the Individual Defendants**

As Defendants correctly argue, it is well settled that Title VII prohibits suits against Defendants sued individually. *See Little v. BP Expl. & Oil Co.*, 265 F.3d 357, 362 (6th Cir. 2001) ("The law in this Circuit is clear that a supervisor who does not otherwise qualify as an employer cannot be held personally or individually liable under Title VII.") (citing *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997); *see also Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012) ("An individual cannot be held personally liable for violations of Title VII."). While an individual can be liable under Title VII in rare instances when he or she qualifies as an employer, in this case Plaintiffs do not allege that the individual Defendants employed Plaintiffs, only that DHHS's CFP did.

To the extent Plaintiffs assert Title VII claims against the individual Defendants in their official capacities, the Court finds that this is simply another avenue to establish liability on an employer, and when the employer is named as a

22

defendant (as in this case), an official capacity suit against the individual defendant thus is redundant and duplicative of the suit against the employer.

Plaintiffs did not address these arguments by Defendants in their Response brief opposing Defendants' motion to dismiss, and the Court finds that Plaintiffs have abandoned this claim. *See Doe*, 507 F.3d at 1007-08 (explaining that a plaintiff abandons a claim she fails to raise in her brief opposing the defendant's motion to dismiss).

The Court therefore grants Defendants' motion to dismiss the Title VII claims against the individual Defendants.

Thus, this now leaves only Plaintiffs' ELCRA claims against the individual Defendants, sued in their personal capacities, and Plaintiffs' Title VII claims against DHHS.

## C. Plaintiffs' ELCRA Discrimination and Hostile Work Environment Claims Against the Individual Defendants in their Personal Capacities

Defendants argue that Plaintiffs' ELCRA Claims against the individual Defendants Mellos, Vandenbergh, Moore, Reid, Montri, and Broadnax, in their personal capacities, fail for many reasons.

With respect to Plaintiffs' claims against Defendants under the ELCRA, Defendants concede that the ELCRA permits individual liability for individuals who

act as "agents" of the employer. But Defendants argue that Plaintiffs fail to allege that any of the individually named Defendants had supervisory authority over Plaintiffs, and thus those Defendants should be dismissed. Defendants further argue that Plaintiffs fail to allege that any of the individual Defendants engaged in any acts that could sustain an ELCRA discrimination or hostile work environment claim against them, and that Plaintiffs instead make such allegations only about coworkers or other unnamed individuals.

In their Response brief, Plaintiffs contend that they have alleged sufficient facts concerning the individual Defendants' supervisory liability under the ELCRA. In support, Plaintiffs list the individual Defendants' job titles and then generally recite and summarize the allegations in their Complaint.

The Michigan Supreme Court held in *Elzovic v. Ford Motor Company*, 472 Mich. 408, 431 (2005), that "because employers can be held liable under the [ELCRA], and because agents are considered employers, agents can be held liable, as individuals, under the [ELCRA]." In *Elezovic v. Bennett (After Remand)*, 274 Mich. App. 1 (2007), the Michigan Court of Appeals held that an individual becomes an "agent" for purposes of the ELCRA through "delegation of general supervisory power and authority," and that "[a]n agent can be held directly and individually liable *if he engaged in discriminatory behavior in violation of the [ELCRA] while*

*acting in his capacity as the victim's employer.*" *Id.* at 10, 15 (emphasis added).

Thus, Plaintiffs must allege that the individual Defendants had "supervisory powers or authority to act" on behalf of DHHS with respect to the alleged discriminatory acts against Plaintiffs. *See id.*; *see also Masi v. DTE Coke Operations, LLC*, No. 06-11592, 2007 WL 2827845, at *6-7 (E.D. Mich. Sept. 27, 2007) (Cox, J.) ("Jere, Wetzel and Becken were not 'agents' for purposes of the ELCRA, because they did not have the authority to act in that decision [not to hire plaintiff]."); *Droomer v. Flex-N-Gate Detroit, LLC*, No. 355117, 2021 WL 5019597, at *8 (Mich. Ct. App. Oct. 28, 2021) (holding that although the plant manager "had general supervisory authority and the power to hire and fire employees," he "was not an agent because the evidence does not establish that he had supervisory powers or authority to act on behalf of [the employer] *with respect to the decision to terminate plaintiffs*.") (emphasis added).

Plaintiffs' Complaint contains very few factual allegations regarding the individual Defendants and their alleged involvement in this case. As to Defendants Mellos, Moore, Reid, and Montri, Plaintiffs only allege their respective job titles, but do not otherwise specifically allege that these Defendants were involved in any

25

alleged discriminatory, or other, employment actions with respect to Plaintiffs. (*See* ECF No. 1, Compl. ¶ 4.)[8]

As to Defendant Vandenbergh, Plaintiffs allege her job title, that she "notified the entire CFP" in January 2020 of "training" to remedy past difficulties "of discriminatory harassment and EEOC substantiated complaints," and that she circulated an email about a non-party employee who was disciplined for an offensive social media posting but did not send an email concerning the suspension of unnamed white employees who allegedly committed offenses such as "getting a DUI, sexual assault of a black woman and sprayed a black resident in the face with disinfectant." (*Id.* ¶¶ 4, 13, 14(d).)

Finally, as to Defendant Broadnax, Plaintiffs allege only his job title, that he concluded that there was "insufficient evidence to substantiate who originally distributed the Woolfolk [email] packet" in 2018, and that he filed a criminal complaint against Harrison with the Michigan State Police for the alleged assault against S.B. (*Id.* ¶¶ 4, 11(g), 15(k).) None of these allegations allege that these

---

[8] Other than paragraph 4 of Plaintiffs' Complaint (listing Defendants' job titles), Plaintiffs only otherwise allege they are seeking records regarding Moore, Reid, Vandenbergh, and Broadnax, among numerous other persons, in their union arbitration proceeding. (Compl. ¶ 20(b), (e), (k)) Plaintiffs do not include any allegations that these Defendants were engaged in discriminatory conduct towards Plaintiffs.

Defendants engaged in discriminatory employment actions toward Plaintiffs as Plaintiffs' supervisors (and thus as agents).

An ELCRA race discrimination claim requires a tangible adverse employment action, such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Chen v. Wayne State Univ.*, 284 Mich. App. 172, 202 (2009); *see also White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (citing common examples of materially adverse employment actions to include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits") (citation omitted). Here, both Plaintiffs complain of their termination of employment as their materially adverse employment action. However, their Complaint fails to include any allegations of the individual Defendants' involvement in those termination decisions.

An ELCRA hostile work environment claim requires allegations that the Plaintiffs were subjected to unwelcome conduct or communication on the basis of their race which was intended to, or did, interfere substantially with their employment. *See Betts v. Costco Wholesale Corp.*, 558 F.3d, 461, 468 (6th Cir. 2009) (citing *Downey v. Charlevoix Cnty. Bd. of Comm'rs*, 227 Mich. App. 621, 629

(1998)). As discussed above, Plaintiffs wholly fail to allege any such actions on the part of Defendants Mellos, Moore, Reid, or Montri, and their limited allegations on the part of Defendants Vandenbergh and Broadnax fail to allege that those two Defendants engaged in any actions with respect to Plaintiffs on the basis of Plaintiffs' race or that substantially interfered with Plaintiffs' employment. *See Williams v. Univ. of Michigan*, No. 22-cv-10296, 2022 WL 16796741, at *8 (E.D. Mich. Nov. 8, 2022) ("Because Plaintiff has not alleged any facts with respect to Defendants Grier and Coleman at all, she has necessarily failed to state an ELCRA claim against them.").

Plaintiffs' Complaint instead generally makes broad allegations of conduct by "Defendants" as a group. However, a complaint that categorically refers to "'Defendants' ... fail[s] to 'allege, with particularity, facts that demonstrate what *each* defendant did to violate'" the asserted right. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (emphasis in original); *see also id.* at 596 ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.") (quoting *Robbins v. Oklahoma*, 519 F.3d

28

1242, 1250 (10th Cir. 2008)); *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019)

("Summary reference to a single, five-headed "Defendants' does not support a

reasonable inference that each Defendant is liable for retaliation."). Plaintiffs' vague

and conclusory allegations about "Defendants" thus are not sufficient to put the

individual Defendants on notice of the claims against them. *See Heyne v. Metro.*

*Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently

held that damage claims against government officials arising from alleged violations

of constitutional rights must allege, with particularity, facts that demonstrate what

*each* defendant did to violate the asserted constitutional right.").

Similarly, in their Response to Defendants' motion to dismiss, Plaintiffs do

not identify specific conduct by individual Defendants that forms the basis for their

ELCRA claims against them. Instead, Plaintiffs merely generally recite paragraphs

of their Complaint, which, as discussed above, fail to sufficiently allege actions by

the individual Defendants that would support Plaintiffs' claims against them in their

individual capacity. Plaintiffs do not allege that any of the individual Defendants had

supervisory power or authority to act with regard to Plaintiffs' employment or

otherwise engaged in discriminatory acts toward Plaintiffs.

The Court finds therefore that Plaintiffs fail to sufficiently plead actions by

the individual Defendants to support an ELCRA discrimination or hostile work

environment claim against the individual Defendants in their personal capacity, and those claims are dismissed.

### D. Plaintiffs' ELCRA Retaliation Claim Against the Individual Defendants in Their Personal Capacities and Title VII Retaliation Claim Against DHHS

"To survive dismissal [of a Title VII retaliation claim], [a plaintiff] must allege that (1) she engaged in protected activity; (2) her exercise of that activity was known by the Defendants; (3) the Defendant thereafter took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the materially adverse action." *Boxill*, 935 F.3d at 520 (citing *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)). The analysis is the same under the ELCRA. *See Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012) ("[T]he ELCRA analysis [for retaliation claims] is identical to the Title VII analysis.").

The Court recognizes that "[a] Title VII plaintiff need not make a prima facie showing to survive a motion to dismiss." *Bar v. Kalitta Charters II, LLC*, No. 21-1739, 2022 WL 3042844, at *3 (6th Cir. Aug. 2, 2022) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). A complaint "satisfies the pleading requirements of [Rule] 8(a)(2) so long as it provides an adequate factual basis for a Title VII discrimination claim." *Id.* "Detailed factual allegations are not necessary;

30

a plaintiff need only allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that an employer violated Title VII." *Id.* (internal quotation marks and end citation omitted). While the prima facie standard does not provide strict pleadings requirements, it can be a used means to examine whether a plaintiff has stated a plausible discrimination claim. *See Masaebi v. Arby's Corp.*, 852 F. App'x 903, 908-09 (6th Cir. 2021) (dismissing plaintiff's claim because she had not pleaded facts which supported an inference that employees outside the protected class were treated more favorably than her, and thus had not pleaded facts from which an inference arose that her employer considered her national origin in making employment decisions). With that in mind, the Court considers the elements of a prima facie retaliation claim only as an aid in determining whether Plaintiffs have plausibly stated a claim for relief.

1.  **Plaintiff Woolfolk's Retaliation Claims under Title VII and the ELCRA**

First, considering Plaintiff Woolfolk's Title VII and ELCRA retaliation claims, Defendants argue that while Woolfolk does plead that she engaged in protected activity in the form of filing two prior EEOC charges in 2017 and 2018,

she fails to assert any factual allegations plausibly linking her 2017 and 2018 EEOC

charges with her termination in December 2020 for job misconduct.

Plaintiffs allege in their Complaint that the following acts occurred *after*

Woolfolk filed her 2017 and 2018 EEOC charges:

- "[A] white employee named 'Jim Rockford' requested documents from both Plaintiffs' H drives to retaliate against them" on June 26, 2018;

- "Defendants DHHS and Broadnax concluded that 'there was insufficient evidence to substantiate who originally distributed the Woolfolk packet throughout' the CFP on July 22, 2018;

- The EEOC charges were substantiated on July 25, 2019;

- Vandenbergh's January 29, 2020, email addressed "difficulties in the recent past in terms of discriminatory harassment and EEOC substantiated complaints" and that CFP has "been working to improve upon these past issues;"

- A coworker "slandered Plaintiffs" in January 2020 "by spreading the false rumor that they were allowing patients to stay in bed until 7 a.m."

- Defendants reassigned Woolfolk to another unit three times in February 2020 "to upset her coworkers who believed Woolfolk was responsible for the changes;" and

- Defendants terminated Woolfolk on December 14, 2020, based on the allegation that she falsified work records "when on April 1, 2020, Woolfolk complained that FFS Melvin Wiley had falsified work records without any discipline."

(ECF No. 1, Compl. ¶¶ 11(f) – 14(c).) Woolfolk's 2021 EEOC Charge complains that she was "discharged because of my race, Black, and in retaliation for filing charges of discrimination[.]" (ECF No. 13-2, Woolfolk 2021 EEOC Charge, PageID.94.)

The causal link between protected action and the materially adverse employment actions can be established through direct evidence (which Plaintiffs do not allege), or "knowledge coupled with a closeness in time that creates an inference of causation." *Lavack v. Owen's World Wide Enter. Network, Inc.*, 409 F. Supp. 2d 848, 856 (E.D. Mich. 2005) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)). However, temporal proximity, without "further evidence," is generally not enough to show a causal link, unless perhaps the retaliation occurs "very close" in time to the protected activity. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality."). "[T]he

Sixth Circuit has not established a black letter rule regarding the role of temporal proximity in establishing the causation prong of a prima facie retaliation case." *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 F. App'x 587, 600 (6th Cir. 2009) (discussing cases finding that two to four months may be sufficient temporal proximity); *see also Rogers v. Henry Hord Health Sys.*, 897 F.3d 763, 776 (6th Cir. 2018) (finding nine weeks between protected activity and adverse action "sufficient temporal proximity to establish a causal connection"); *Mickey*, 516 F.3d at 525 ("In those limited number of cases ... where an employer fires an employee immediately after learning of a protected activity, we can infer a causal connection between the two actions, even if [the plaintiff] had not presented other evidence of retaliation."); *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283-84 (6th Cir. 2012) (collecting cases holding that a two- to three-month time lapse between a plaintiff's protected activity and occurrence of a materially adverse action is sufficient temporal proximity to satisfy a plaintiff's prima facie case of retaliation); *Nguyen*, 229 F.3d at 566-67 (noting that "cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months") (internal quotation marks omitted); *Stein v. Atlas Indus., Inc.*, 730 F. App'x 313, 319 (6th Cir. 2018) (collecting cases and finding that the Sixth Circuit draws the line for temporal proximity alone satisfying causation at just shy of the ten-week

mark). The Sixth Circuit has explained that "the more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement [her] claim with other evidence of retaliatory conduct to establish causality." *Akers v. Cnty of Bell,* 498 F. App'x 483, 487 (6th Cir. 2012).

The mere fact that Woolfolk had engaged in protected activity and then was terminated two years later is not enough to plausibly allege a retaliation claim under Title VII or the ELCRA. Here, more than two years elapsed between when Plaintiff Woolfolk filed her charges of discrimination in 2017 and 2018 and when she was terminated in December 2020. Whether Plaintiff sufficiently supplemented her claim with "other evidence of retaliatory conduct" to sufficiently show causality is a close question. She alleges a few isolated incidents in 2018 and early 2020 involving her coworkers, not Defendants, and with no specific allegations that Defendants were aware of such alleged conduct. However, she also alleges that she was reassigned to another unit "approximately 3 times in February 2020 to upset her co-workers who believed Woolfolk was responsible for the changes," that "RN Supervisor David Day, a white male, harassed Woolfolk for complaining to the Unit Supervisor that Day had not included important details in an Incident Report," and that she was terminated in December 2020 "based on the false allegation that she falsified work records when on April 1, 2020, Woolfolk complained that FFS Melvin Wiley had

35

falsified work records without any discipline." (ECF No. 1, Compl. ¶¶ 14(b), (c), (e).)

To show a materially adverse action for purposes of a retaliation claim, the plaintiff must show that the action might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Barrow v. City of Cleveland*, 773 F. App'x 254, 262-63 (6th Cir. 2019). Although Plaintiffs' Complaint otherwise offers no detail regarding any alleged causal link between her protected activity and any alleged materially adverse employment action or that she was terminated in retaliation for engaging in protected activity, the Court concludes, at this early stage of the proceedings, that Plaintiffs' allegations provide "sufficient factual content" from which the Court, informed by "judicial experience and common sense, could draw the reasonable inference" that Plaintiffs sufficiently allege that Defendant DHHS retaliated against Woolfolk for filing her two prior EEOC charges. *See Bar*, 2022 WL 3042844, at *5.

However, as to the remaining individual Defendants – Mellos, Vandenbergh, Moore, Reid, Montri, and Broadnax – as discussed above, Plaintiffs' Complaint fails to plead any actions by those individual Defendants to support a retaliation claim under the ELCRA as to Plaintiff Woolfolk. In her Response brief, Woolfolk only argues that "Vandenbergh's January 29, 2020 email provides evidence of the causal

link between Woolfolk's protected activity and all of Defendants' further retaliation, including Plaintiffs' terminations, which occurred thereafter[.]" (ECF No. 15, Pls.' Resp. PageID.164.) However, even taken in the light most favorable to Plaintiffs, it is not apparent how Vandenbergh's January 2020 email – admitting past "difficulties … in terms of discriminatory harassment and EEOC substantiated complaints" and that CFP has "been working to improve upon these past issues" – provides any evidence of a materially adverse action, a retaliatory motive by Vandenbergh, or otherwise has any causal relationship to Plaintiff Woolfolk's termination, almost one year later for misconduct.

The Court finds, therefore, at this stage of the proceedings, and taking all reasonable inferences in favor of the Plaintiffs, that Plaintiff Woolfolk sufficiently alleges a Title VII retaliation claim as to Defendant DHHS, but that she fails to allege an ELCRA retaliation claim against the individual Defendants in their personal capacities.

### 2.  Plaintiff Harrison's Title VII and ELCRA retaliation claim

As to Plaintiff Harrison, Defendants correctly argue in their Motion to Dismiss that Plaintiffs fail to allege in their Complaint that Harrison engaged in any protected activity *during* his employment tenure, and instead only allege that Harrison filed an EEOC charge after he was terminated. (See ECF No. 1, Compl. ¶

37

16.) Defendants argue that Harrison's retaliation claim therefore fails because his only alleged "protected activity" occurred after his employment had already ended with DHHS, and thus he could not have been terminated in retaliation for engaging in that post-termination protected conduct.

Plaintiffs argue in their Response brief that Defendants were aware of Harrison's protected conduct because his post-discharge 2021 EEOC Charge alleging retaliation, refers to his two prior EEOC Charges filed before his termination – Charge Nos. 471-2020-03382 and 471-2020-01694. Specifically, Harrison's Charge No. 471-2020-01694 was filed on February 3, 2020, and states that on January 29, 2020, DHHS suspended him for alleged insubordination while other similarly situated persons outside a protected class were not similarly disciplined, and Charge No. 471-2020-03382, filed on July 23, 2020, states that Harrison was verbally assaulted by another white employee in April and May 2020, but that DHHS took no action against the white employee. (ECF Nos. 15-6, 15-7.) Plaintiffs contend that these earlier EEOC charges are "implicitly referred to in their Complaint by reference to Harrison's present E.E.O.C. Charge, which specifically refers to his prior Charges [], and are integral to his claims of retaliation by Defendants." (ECF No. 15, Pls.' Resp., PageID.166 fn.4.)

38

Defendants recognize that this Court may consider documents referred to in the pleadings that are integral to Plaintiffs' claims on a motion to dismiss (such as Plaintiffs' 2021 EEOC Charges referred to in paragraph 16 of Plaintiffs' Complaint), but argue that Harrison's prior EEOC charges were not expressly referred to in Plaintiffs' Complaint (like Woolfolk's were) and that Plaintiffs cannot add new allegations to their Complaint (regarding Harrison's earlier-filed EEOC charges) via their Response brief.

Given that Harrison's 2021 EEOC Charge (which both parties agree may be considered by this Court on Defendants' motion to dismiss) alleges retaliation, expressly refers to two of Harrison's prior EEOC charges, and alleges discrimination from February 3, 2020 (the date Harrison filed his first EEOC Charge) through October 6, 2020 (his termination date), the Court will consider these two prior charges as alleging that Harrison engaged in protected activity of which Defendants were aware. The second EEOC charge was filed on July 23, 2020, approximately one month before Harrison alleges he was improperly suspended for allegedly assaulting white resident S.B. and less than three months before he was terminated based on that alleged assault. Plaintiffs allege in their Complaint other actions by "Defendants" between the time Harrison filed his first EEOC charge and his termination, including reassigning Harrison, allowing a security breach of

39

Harrison's passwords and login credentials, discriminatorily applying leave time, placing him under investigation, harassing him, and filing a criminal complaint against him (that was ultimately dropped by the prosecutor's office). (ECF No. 1, Compl. ¶ 15(e)-(k).) The Court finds at this stage of the proceedings, taking all of these allegations in the light most favorable to Plaintiffs, that Harrison has sufficiently pleaded a Title VII retaliation claim against Defendant DHHS.

As to Harrison's ELCRA retaliation claim against the individual Defendants, Plaintiffs allege only that Broadnax, the Director of Safety and Security, filed a criminal complaint against Harrison on August 23, 2020. (ECF No. 1, Compl. ¶ 15(k).) The filing of a criminal complaint of assault could dissuade a reasonable person from making a claim of discrimination, and thus could meet the "relatively low bar" of a material adverse action required for a retaliation claim. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007); *see also Schuette v. Jackson Cnty.*, No. 18-10497, 2022 WL 2121524, at *5-6 (E.D. Mich. June 13, 2022) (citing cases finding that filing a false police report could be construed as constituting a materially adverse action meant to discourage a person from pursuing his claim). The Court therefore will not dismiss Plaintiff Harrison's ELCRA retaliation claim against Defendant Broadnax.

However, the Court finds, as discussed above, that Plaintiffs' Complaint fails to allege any actions by the remaining individual Defendants Mellos, Vandenbergh, Moore, Reid, and Montri in retaliation for Harrison's engagement in protected activity, and his ELCRA retaliation claims against Defendants Mellos, Vandenbergh, Moore, Reid, and Montri are therefore dismissed.

### E. Plaintiffs' Title VII Hostile Work Environment Claims – Failure to Exhaust

Generally, a plaintiff may not bring Title VII claims in federal court without first exhausting his or her administrative remedies on those claims by including them in a charge filed with the EEOC. *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 627 (6th Cir. 2013) (citing *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010)). To exhaust administrative remedies, a plaintiff must "(1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue ('right to sue letter')." *Granderson v. Univ. of Michigan*, 211 F. App'x 398, 400 (6th Cir. 2006). "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Younis*, 610 F.3d at 361 (quoting 29 C.F.R. § 1601.12(b)). "This requirement serves to put employers on notice and gives the EEOC the

opportunity to investigate or settle the dispute." *Golden v. Mirable Inv. Corp.*, 724 F. App'x 441, 445 (6th Cir. 2018) (citing *Younis*, *supra*).

The judicial complaint "must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Tisdale v. Federal Exp. Corp.*, 415 F.3d 516, 527 (6th Cir. 2005) (citation omitted). Under the Sixth Circuit's "expected scope of investigation" test, a plaintiff's EEOC charge may satisfy the exhaustion requirement with respect to a Title VII claim despite her failure to "check the box" corresponding to that claim or otherwise raise the claim explicitly. *See Dixon v. Ashcroft,* 392 F.3d 212, 217 (6th Cir. 2004). "[W]here facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Id.* (quoting *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002)). Title VII's exhaustion requirement does not apply to ELCRA claims. *Fuller v. Michigan Dep't of Transp.*, 580 F. App'x 416, 425 (6th Cir. 2014) (citing *Rogers v. Bd. of Educ.*, 2 F.3d 163, 168 (6th Cir. 1993)).

Defendants argue that Plaintiffs' Title VII hostile work environment claim should be dismissed because Plaintiffs failed to allege hostile work environment in their 2021 EEOC Charges and failed to receive a right to sue letter from the EEOC relating to a hostile work environment. Defendants assert that neither Plaintiff's

EEOC Charge alleges a "continuing violation," which Defendants assert is a prerequisite for a claim of hostile work environment, and that Plaintiffs fail to allege any facts in their EEOC Charges that would put the EEOC on notice that they were asserting a hostile work environment claim. Rather, the EEOC Charges only allege retaliation and "disparate treatment" based on their respective termination dates.

The Court agrees. "In order to establish a claim of hostile work environment, … a plaintiff must present evidence of harassment that 'unreasonably interfere[es] with [his] work performance and create[es] an objectively intimidating, hostile, or offensive work environment.'" *Younis*, 610 F.3d at 362 (quoting *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008)). Plaintiffs only checked the boxes for race discrimination and retaliation in their EEOC Charges, and only include allegations related to their terminations. The Charges did not assert any facts in the body of the charges that would put the EEOC on notice that Plaintiffs were asserting a hostile work environment claim. Woolfolk lists December 14, 2020, (the date of her termination) as the "earliest" and the "latest" date discrimination took place, and only complains that she was discharged because of her race and in retaliation for filing prior charges of discrimination. (ECF No. 13-2, Woolfolk 2021 Charge, PageID.93-94.) Harrison lists February 2, 2020 (the date of his first EEOC charge), as the "earliest" date discrimination took place and October 6, 2020 (his termination

43

date) as the "latest," and similarly complains only that he was discharged due to his race and in retaliation for complaining of discrimination. (ECF No. 13-3, Harrison 2021 Charge, PageID.96-97.)

Because Plaintiffs' 2021 EEOC Charges address discrete acts and did not include any content that could reasonably be expected to prompt the EEOC to investigate a hostile work environment claim, Plaintiffs' Title VII hostile work environment claims are dismissed for failure to exhaust administrative remedies. *See Younis*, 610 F.3d at 362 ("the inclusion in an EEOC charge of a discrete act or acts, standing alone, is insufficient to establish a hostile work-environment claim for purposes of exhaustion"); *see also Golden*, 724 F. App'x at 445 (noting that "the generic charge of race and sex-based discrimination on the date of his termination simply would not otherwise 'prompt the EEOC to investigate' hostile work environment claims or discrimination claims based on promotions, raises, leave or job duties"); *Jones v. City of Franklin*, 309 F. App'x 938, 943 (6th Cir. 2009) ("No decision in this circuit has held that EEOC charges regarding discrete acts of discrimination are alone sufficient to put the EEOC on notice of a hostile-work-environment claim. Several unpublished decisions of this court have in fact held to the contrary.") (collecting cases).

44

Plaintiffs argue in their Response brief only that although their 2021 EEOC Charges do not assert a "continuing violation," those charges refer to earlier EEOC charges in which Plaintiffs did allege a "continuing violation." (ECF No. 15, Pls.' Resp., PageID.167.) However, Plaintiffs fail to cite to any authority that an EEOC Charge's reference to earlier EEOC Charges (which the Court notes do not mention a racially hostile work environment) is sufficient to exhaust a claim that is not alleged in the EEOC charge at issue. Further, as the Sixth Circuit Court of Appeals previously noted, "to find otherwise would undermine the standard set forth by *Younis* and permit any generic one-issue EEOC claim to cover all other forms of discrimination in the workplace." *Golden*, 724 F. App'x at 445-46 (citing *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 464 (6th Cir. 1998) ("The charge filing requirement would be written out of the law, and the triggering and conciliation functions disabled, were we to accept Davis' argument.")).

Accordingly, the Court dismisses Plaintiffs' Title VII hostile work environment claims for failure to exhaust administrative remedies.

### F. Plaintiff Woolfolk's Title VII discrimination claim

The Court first notes that Defendants do not argue in their motion to dismiss that Plaintiff Harrison's Title VII discrimination claim should be dismissed, and thus the Court considers that claim unopposed.

Defendants argue that Woolfolk fails to establish a Title VII disparate impact discrimination claim against Defendant DHHS. Defendants contend that the Court should dismiss all of Plaintiffs' allegations in their Complaint of events outside of the statutory 300-day time period window of the EEOC charges, and thus consider only events from May 3, 2020, to the Charge filing date of March 2, 2021, citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002) as holding that "[e]ach incident of discrimination and reach retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice" and "only incidents that took place within the timely filing period are actionable." *Morgan*, 536 U.S. at 114. Defendants argue that Woolfolk therefore can only rely on the allegations in Paragraphs 14(c), (e), and (f) of the Complaint to support her discrimination charge, stating that Paragraph 14(d) does not allege any adverse employment action.

Defendants are correct that the United States Supreme Court stated in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) that, in Title VII cases claiming a violation based on a discrete act of discrimination (such as here), "[e]ach incident of discrimination and reach retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice" and "only incidents that took place within the timely filing period are actionable." *Id.* at 113-

46

14. However, the Supreme Court in *Morgan* also held that a plaintiff is not prevented from using otherwise time-barred incidents as "background evidence in support of a timely claim." *Id*. at 113 (holding that for discrete discrimination or retaliation claims, an employee is not barred "from using the prior acts as background evidence in support of a timely claim"); *see also Clack v. Rock-Tenn Co.*, 304 F. App'x 399, 403 (6th Cir. 2008) ("Here, Clack is not attempting to recover based on Murphy's past statements but, as explicitly allowed by *Morgan*, is simply using them as background evidence to prove pretext."). Thus, Woolfolk is not prohibited from using otherwise time-barred incidents as "background evidence" for her present claim.

Defendants argue that Woolfolk does not expressly allege in Paragraphs 14(c) and (f) that her race played any factor in her December 14, 2020, termination. In Paragraph 14(c), Plaintiffs allege "Defendants terminated Woolfolk based on the false allegation that she falsified work records when on April 1, 2020, Woolfolk complained that FFS Melvin Wiley had falsified work records without any discipline," and in allege in paragraph 14(f) that "Defendants discharged Woolfolk based on the false allegation that on August 23, 2020, she did not correctly prepare an Incident Report concerning Harrison's proper restraint of resident S.B. who had assaulted Harrison by spitting in his face after referring to him and Woolfolk as

"N*****." (ECF No. 1, Compl. ¶¶ 14(c), (f).) Although, Plaintiff is not required to "establish a prima facie case at [the pleading/motion to dismiss] stage, she must still allege sufficient factual content to make a claim for relief plausible" and allege a sufficient factual basis for her claim that Defendants unlawfully terminated her on the basis of her race. *Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 722 (E.D. Mich. 2021); *see also Coats v. McDonough*, No. 3:20-cv-00298, 2021 WL 5846550, at *11 (M.D. Tenn. Dec. 9, 2021) ("A plaintiff alleging a Title VII race discrimination claim must plead facts which allow the court to infer that the adverse employment action related to the plaintiff's race") (internal quotation marks and brackets omitted). Thus, "[a] plaintiff alleging a Title VII race discrimination claim 'must plead facts which allow the court to infer that the [adverse employment action] related to the plaintiff's race.'" *Coats*, 2021 WL 5846550, at *11 (citation omitted).

In their Response brief, Plaintiffs do not specifically address the shortcomings in Paragraphs 14(c) and (f) of the Complaint, and instead argue that Woolfolk's Title VII discrimination claim is supported by her allegations that Defendants reassigned her to another unit three times in February 2020 and terminated her on December 14, 2020. Woolfolk specifically argues that her allegations in Paragraph 14(e) support her Title VII discrimination claim against Defendants. Plaintiffs allege in paragraph 14(e) that:

48

> On August 19, 2020, RN Supervisor David Day, a white male, harassed
> Woolfolk for complaining to the Unit Supervisor that Day had not
> included important details in an Incident Report, for which he was not
> disciplined, while on December 14, 2020, Woolfolk was terminated for
> not providing sufficient detail in an incident report dated August 23,
> 2020, involving Harrison and resident S.B.

(ECF No. 1, Compl. ¶ 14(e).) Plaintiffs argue that "this comparison provides support

for Woolfolk's claim that she was subjected to differential discipline for engaging

in the same conduct as Day which satisfies the 'similarly-situated' prima facie

element of her race discrimination claim." (ECF No. 15, Pls.' Resp., PageID.170,

citing *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769 (2016).)

To show that another employee is "similarly situated," a plaintiff need not

demonstrate an "exact correlation," but instead must demonstrate that she and the

other employee are similar in "all of the relevant aspects." *Laws v. HealthSouth N.*

*Ky. Rehab. Hosp. Ltd. P'ship*, 508 F. App'x 404, 411 (6th Cir. 2012) (citing

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998))

(internal quotation marks and emphasis omitted). Relevant factors include "whether

the employees (1) engaged in the same conduct, (2) dealt with the same supervisor,

and (3) were subject to the same standards." *See Johnson v. Ohio Dep't of Pub.*

*Safety*, 942 F.3d 329, 331 (6th Cir. 2019)); *see also Mitchell v. Toledo Hosp.*, 964

F.2d 577, 583 (6th Cir. 1992) (stating that the other employee ordinarily "must have

49

dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (citations omitted). Thus, a plaintiff must provide "specifics regarding the other employees or their differing treatment" such as "names, ages, or qualifications for the [similar] employees who were treated differently, or any examples of how their treatment differed" in order to survive a motion to dismiss. *Wrigley Mfg. Co.*, 749 F. App'x at 448 (citations omitted) (explaining that plaintiff's complaint "needed to present factual allegations sufficient for the court to draw a reasonable inference of discrimination," and "[i]n the absence of facts regarding the ages or positions of the younger, similarly-situated employees, or any example of how those employees were treated differently, the court could not do so.").

Defendants argue in their motion to dismiss that Nurse David Day is, as a matter of law, not a similarly situated employee to Woolfolk for the required comparability analysis because there are no allegations that Woolfolk is an RN Supervisor (rather she is an FSA), or that Day and Woolfolk reported to the same supervisor.

The Court agrees. While Plaintiffs broadly allege that Woolfolk and Day engaged in similar conduct – not including important details in an Incident Report –

Plaintiffs fail to allege how Day, an RN Supervisor, and Woolfolk, an FSA, are similarly situated in any other relevant respect. The Complaint contains no factual allegations that both Woolfolk and Day were subject to the same standards or had similar job responsibilities. Plaintiffs merely allege that Day is "a white male" and allegedly was not disciplined after Woolfolk claims she complained to someone that he had not included unidentified "important details" in an Incident Report. Similarly, as to Plaintiffs' allegations with regard to FFS Melvin Wiley in paragraph 14(c), Plaintiff do not allege Wiley's race, much less that he and Woolfolk engaged in similar conduct, reported to the same supervisor, or were subject to the same standards or had similar job responsibilities. The Court finds that the bare allegations pleaded fail to plausibly satisfy the Sixth Circuit's similarly-situated standard, and that Woolfolk fails to plausibly allege a Title VII discrimination claim against DHHS because she has not provided specific allegations that she was treated less favorably than a similarly situated individual outside of her protected class. *Compare Bender v. Gen. Dynamics Land Sys., Inc.*, No. 2:19-cv-13177, 2020 WL 4366049, at *6 (E.D. Mich. July 30, 2020) (plaintiff failed to plausibly allege a Title VII discrimination claim because she "does not identify these supposedly similarly situated employees, nor does she explain whether they occupied the same position at General Dynamics as she did, dealt with the same supervisor, or engaged in

conduct similar to Plaintiff"); *with Mitchell v. Ohio State Univ.*, No. 2:19-cv-4162, 2020 WL 5250459, at *5 (S.D. Ohio Sept. 3, 2020) (plaintiff plausibly alleged discrimination claim when she identified three male employees "who shared her supervisor, were bound by the same policies, and engaged in similar conduct who were not terminated" and that she was replaced by a male professor who lacked a marketing degree). "The Court is not required to accept inferences drawn by Plaintiff if those inferences are unsupported by the facts alleged in the complaint." *Sam Han*, 541 F. App'x at 627.

Plaintiff Woolfolk fails to state a claim for discrimination against Defendant DHHS under Title VII and that claim therefore is dismissed.

### G. Whether Plaintiff Harrison's Pending Workers' Compensation Case Requires This Court to Abstain From Exercising Jurisdiction over Harrison's Civil Rights and Due Process Claims

Finally, Defendants argue that the Court should abstain from adjudicating Harrison's claims for mental and emotional injuries because he has a pending Workers' Compensation Disability Act claim.

Plaintiffs argue in their Response brief that federal abstention does not apply here because Harrison is not challenging the adequacy of the Michigan Workers' Compensation Disability Agency to adjudicate his workers' compensation claim by his civil rights and due process claims in this lawsuit.

The Court agrees with Plaintiffs. Plaintiffs explain that Harrison's workers' compensation claim concerns only the injuries he sustained in his altercation with S.B., and not the mental anguish and emotional distress damages he seeks in this lawsuit based on Defendants alleged unlawful discrimination. Plaintiffs do not claim that employment discrimination resulted in physical disability, for which Harrison is seeking workers compensation disability benefits; rather the claimed disability (from the altercation with S.B.) preceded the alleged unlawful discrimination (from Harrison's termination). The injuries are distinct. *See Moll v. Parkside Livonia Credit Union*, 525 F. Supp. 786, 790 (E.D. Mich. 1981) (abstention of a separate employment suit required only where mental injuries resulting from such discrimination culminates in a physical disability); *compare Paris v. Michigan, Dep't of Police*, No. 07-11026, 2007 WL 4180801, at *3-4 (E.D. Mich. Nov. 26, 2007) (abstaining from considering plaintiff's federal claim that the termination of his weekly wage benefits was a form of retaliation because that claim was identical to his claim before the WDCA).

Thus, the Court finds that it does not need to abstain from adjudicating Harrison's discrimination claims here.

## IV.   CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss (ECF No. 13).

Defendants' motion to dismiss is DENIED as to (1) Plaintiffs Woolfolk's and Harrison's claims for retaliation under Title VII against Defendant DHHS; (2) Plaintiff Harrison's retaliation claim under the ELCRA against Defendant Broadnax; and (3) Plaintiff Harrison's claim for discrimination under Title VII against Defendant DHHS, and those claims may proceed.

Defendants' motion to dismiss is GRANTED as to the remainder of Plaintiffs' claims, which are DISMISSED WITH PREJUDICE.

Specifically, the Court:

(1) DISMISSES Plaintiffs' ELCRA claims (in Count I) against Defendant DHHS and the individual Defendants sued in their official capacities as barred by sovereign immunity;

(2) DISMISSES Plaintiffs' due process claims (Count II) against Defendants as barred by sovereign immunity;

(3) DISMISSES Plaintiffs' Title VII claims against the individual Defendants because Title VII prohibits suits against defendants sued individually, and

official capacity claims are redundant/duplicative of the suit against DHHS;

(4) DISMISSES Plaintiffs' ELCRA discrimination and hostile work environment claims against the individual Defendants in their personal capacities for failure to state a claim;

(5) DENIES Defendants' motion to dismiss Plaintiff Woolfolk's and Harrison's Title VII retaliation claims against Defendant DHHS and DENIES Defendants' motion to dismiss Plaintiff Harrison's ELCRA retaliation claim against Defendant Broadnax in his personal capacity, but otherwise DISMISSES Plaintiffs' ELCRA retaliation claims against the remaining individual Defendants in their personal capacities;

(6) DISMISSES Plaintiffs' Title VII hostile work environment claims against DHHS for failure to exhaust administrative remedies;

(7) DISMISSES Plaintiff Woolfolk's Title VII discrimination claim against Defendant DHHS (Defendants failed to seek dismissal of Plaintiff Harrison's Title VII discrimination claim); and

(8) DECLINES to abstain from adjudicating Plaintiff Harrison's claims based

on his pending Workers' Compensation Act case.


IT IS SO ORDERED.

                                    s/Paul D. Borman
                                    Paul D. Borman
                                    United States District Judge

Dated: June 28, 2023