UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANTONIO HARRISON, et al.,<br>                              Plaintiffs,<br><br>v.<br><br>MICHIGAN DEPARTMENT OF<br>HEALTH AND HUMAN<br>SERVICES, et al.<br>                              Defendants. | Case No. 22-12034<br>Honorable Shalina D. Kumar<br>Magistrate Judge Kimberly G. Altman |

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 56)

Plaintiffs Antonio Harrison ("Harrison") and Raychelle Woolfolk ("Woolfolk") sue their employer; Michigan Department of Health and Human Services ("MDHHS") and Leon Broadnax ("Broadnax"); Director of the Center for Forensic Psychiatry ("CFP"), the MDHHS facility where plaintiffs worked; for racial discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), M.C.L. 37.2291 *et seq.*[1] Defendants move for summary

---

[1] Plaintiffs' complaint named several other individual defendants who were previously dismissed from the case along with plaintiffs' other stated causes of action. *See* ECF No. 24. Harrison's claims for discrimination and retaliation under Title VII against MDHHS and his retaliation claim under

judgment, their motion has been fully briefed, and the Court heard oral argument. ECF Nos. 56, 59, 61. For the following reasons, the Court **GRANTS** in part and **DENIES** in part defendants' motion for summary judgment.

## I.      Factual Background

Harrison and Woolfolk are African American MDHHS employees, working as Forensic Security Assistants ("FSA") at CFP. FSA duties include the safety and security of CFP patients. ECF No. 1; ECF No. 56, PageID.640, ¶¶ 1-2.

### A. The August 23, 2020 Incident

On August 23, 2020, Harrison and Woolfolk were working in CFP's East 3 unit. ECF No. 56, PageID.646 ¶ 13. At approximately 1 p.m., a patient, S.B., entered the unit, approached plaintiffs, cursed at them, used racial slurs, and challenged Harrison to a fight. *Id.* ¶ 14, 16. Less than a minute later, S.B. spit at Harrison. *Id.* ¶ 17; ECF No. 56-16 at 0:00:54-0:00:56.

---

ELCRA against Broadnax survived defendants' motion to dismiss, as did Woolfolk's Title VII retaliation claim against MDHHS. *Id*. at PageID.307.

Immediately after S.B. spit at him, Harrison brought S.B. to the floor. The video shows Harrison landing on top of him and S.B.'s shoes coming off during the encounter. *Id*. at 0:00:56-0:01:01. Other staff then assisted in restraining S.B., who was taken to a seclusion room. *Id.* at 0:00:59-0:01:48; ECF No. 56-17, PageID.1639-40, ¶ Z. Woolfolk witnessed the incident and completed an incident report shortly afterward stating that "[S.B.] and [Harrison] fell to the floor." ECF No. 56, PageID.647, ¶ 19; ECF No. 56-18, PageID.1643-44.

Later that day, Nurse Marquita Alverson examined S.B. and noted bruising to his right elbow and right forearm, along with scabbed abrasions on his right knuckles, but no other injuries at that time. ECF No. 59-7, PageID.2724.

Two days later, Broadnax reviewed the video and reported suspected patient abuse to the Office of Recipient Rights ("ORR") and the Michigan State Police. ECF No. 56, PageID.648, ¶ 22; ECF No. 56-17, PageID.1628. CFP Hospital Director Andrea Vandenbergh ("Vandenbergh") also referred the incident to ORR. ECF No. 56-17, PageID.1628. Harrison was then suspended pending the ORR investigation. ECF No. 56, PageID.649, ¶ 23; ECF No. 56-2, PageID.886, 209:5-7.

On September 3, 2020, S.B. was examined at St. Joseph Hospital and diagnosed with closed fractures of four ribs on his right side and a concussion without loss of consciousness. *See* ECF No. 56-29; *see also* ECF No. 66, PageID.3118 (sealed).

On December 1, 2020, Woolfolk was suspended pending a disciplinary conference. ECF No. 56-30, PageID.2445.

### B. Plaintiffs' Prior Complaints

#### i.   Woolfolk

In 2017, Woolfolk filed an EEOC charge alleging she had been suspended on a false accusation of patient neglect because of her race. ECF No. 56-3, PageID.1184, 3-12. In 2018, she filed another EEOC charge alleging race discrimination and retaliation. ECF No. 56, PageID.653, ¶ 35. Both charges were substantiated and the EEOC issued a conciliation agreement on July 25, 2019. ECF No. 56-33, PageID.2538-45.

On April 27, 2020, Woolfolk emailed Michigan Civil Service Commission employee Michael Derose and complained, in part, of "serious systemic racial issues" at CFP. ECF No. 59-16, PageID.2878-80. She also referred to an incident in which, during a management personnel meeting,

a manager allegedly asked, "why are there so many Black people in here?" *Id.* at PageID.2879.

On June 12, 2020, Woolfolk emailed Vandenbergh and asked her to address what Woolfolk described as disparate treatment involving CFP staff and patients of different races, as well as ongoing systemic racism at CFP. ECF No. 59-16, PageID.2882-84.

On September 1, 2020, Woolfolk again emailed Vandenbergh, this time complaining of alleged implicit bias and systemic racism at CFP. ECF No. 59-14, PageID.2855-56. She referred to Harrison's suspension, what she viewed as disparate treatment between Harrison (suspended) and a white FSA (praised) who also restrained a patient, and broader disparities in how CFP handled patient complaints of staff assault. *Id.* She concluded that "it strongly appears that all hiring, and promotion practices and other conditions of employment are not being maintained and conducted in a manner that ensures compliance with Title VII . . . ." *Id.* That same day, she forwarded the email to Michigan Governor Gretchen Whitmer and Lieutenant Governor Garlin Gilchrist. *Id.*

### ii.   Harrison

In 2017, Harrison filed a discriminatory harassment complaint. ECF No. 56-2, PageID.752, 75:12-22. He later filed EEOC charges in February and July of 2020. ECF No. 56, PageID.653, ¶¶ 33-34; ECF No. 15-6, PageID.210; ECF No. 15-7, PageID.212.

In the February 2020 charge, Harrison alleged he had been suspended for insubordination while similarly situated employees outside his protected class were not. ECF No. 15-6, PageID.210. In the July 2020 charge, he alleged that white male employees had verbally assaulted and/or physically threatened him and that MDHHS did nothing because of his race. ECF No. 15-7, PageID.212. MDHHS states that it has no record of the July 2020 charge. ECF No. 56, PageID.653, ¶ 34.

On April 9, 2020, Harrison emailed Vandenbergh and complained of disparate treatment between himself and white male employees concerning the use of CFP computers. ECF No. 59-16, PageID.2900-01.

On September 1, 2020, Harrison forwarded to Governor Whitmer an email where another FSA employee complained that Harrison had been suspended while a white FSA had been praised after restraining a patient. ECF No. 59-14, PageID.2858-61. In his comments to Governor Whitmer,

Harrison complained about CFP leadership, proposed solutions, and sought redress for what he described as harassment, discrimination, and systemic or implicit racism issues at CFP. *Id.*

### C. The ORR Investigation

On September 16, 2020, ORR concluded that Harrison's conduct satisfied Abuse I, which it defined as an "act . . . by an employee . . . that caused or contributed to . . . serious physical harm to a recipient." ECF No. 56-17, PageID.1628. But the report's findings section stated that "[Harrison] committed a nonaccidental act that caused or contributed to ***nonserious*** physical harm to a recipient." *Id.* at PageID.1641 (emphasis added).

On September 18, 2020, Vandenbergh issued a Director's Summary Report recommending discipline for Abuse I and stating that the charge was substantiated by "a preponderance of the evidence that [Harrison] committed a nonaccidental act that caused or contributed to ***serious*** physical harm to the patient." ECF No. 56-22, PageID.2019 (emphasis added).

ORR also investigated Woolfolk for allegedly failing to fully report Harrison's physical management of S.B. ECF No. 56, PageID.651, ¶ 28. On November 18, 2020, ORR concluded that Woolfolk committed Neglect

I. ECF No. 56, PageID.651, ¶ 28; ECF No. 56-26, PageID.2356. On

November 24, 2020,[2] Vandenbergh issued a Director's Summary Report,

recommending discipline on that basis. ECF No. 56, PageID.652, ¶ 29;

ECF No. 56-28, PageID.2441.

### D. Plaintiffs' Dismissals, EEOC Charges, and Arbitration

A disciplinary conference was held for Harrison on October 6, 2020,

and he was dismissed from CFP as a result. ECF No. 56, PageID.651, ¶

27. After Harrison's dismissal, Human Resources Director Diane Montri

issued a memorandum stating that, "due to a typing error," the Director's

Summary Report had been amended to change "***non-serious*** physical

harm" to "***serious*** physical harm." ECF No. 56-22, PageID.2022 (emphasis

added).

A disciplinary conference was held for Woolfolk on December 14,

2020, and she too was dismissed. ECF No. 56, PageID.652, ¶ 30; ECF No.

56-32, PageID.2522.

---

[2] Vandenbergh's Director's Summary Report is ostensibly dated August 24, 2022, ECF No. 56-28, PageID.2427. The Court assumes this is an error because the pages of the report itself show a timestamp of November 24, 2020. *See* ECF No. 56-28, PageID.2428-42.

On March 2, 2021, both plaintiffs filed EEOC charges challenging their dismissals and alleging race discrimination and retaliation. ECF No. 13-3, PageID.96-97; ECF No. 13-2, PageID.93-94. Harrison's charge stated that the alleged discrimination occurred from February 3, 2020, through October 6, 2020. ECF No. 13-3, PageID.96-97. Woolfolk's charge stated that the alleged discrimination occurred on December 14, 2020. ECF No. 13-2, PageID.93-94. Neither charge identified the alleged conduct as part of a continuing violation. ECF No. 13-3, PageID.96-97; ECF No. 13-2, PageID.93-94. Plaintiffs received right to sue letters on June 6, 2022.

Plaintiffs then pursued union arbitration. ECF No. 56, PageID.652, ¶ 31. The arbitrator issued a decision on August 1, 2023. *Id.*; ECF No. 56-32, PageID.2453, 2536. Harrison's grievance was granted in part, and his conduct was reduced to Abuse II. ECF No. 56, PageID.652, ¶ 31. Woolfolk's grievance was granted in full. *Id.* Both plaintiffs were reinstated to their former positions and are currently employed at CFP. *Id.*

## II.    Standard of Review

Summary judgment is appropriate where the evidence in the record, viewed in its entirety, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law. See Fed. R. Civ. P. 56(a). "The moving party bears the burden of showing that no genuine issues of material fact exist." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 516–17 (6th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986)). In reviewing a motion for summary judgment, courts are to "view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Williams v. Mauer*, 9 F.4th 416, 430 (6th Cir. 2021) (citation omitted). The ultimate question for the court to determine "is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Payne v. Novartis Pham. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

When events at issue are captured on video, courts are to "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). But if the video evidence "can be interpreted in multiple ways or if [the] videos do not show all relevant facts, such facts should be viewed in the light most favorable to the non-moving party." *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017). Viewing the facts in this manner, if "there are any genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment should be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56.

### III.    Analysis

Defendants first argue that plaintiffs' Title VII claims must be limited to their dismissals and may not rely on earlier incidents because those incidents are untimely or unexhausted. The Court does not fully agree. It is true that discrete discriminatory or retaliatory acts outside the limitations period are not independently actionable. But untimely acts may still be considered as background evidence in support of a timely claim. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Here, defendants concede that for Title VII purposes, incidents that occurred within the 300-day window preceding the EEOC charges may be considered. ECF No. 56, PageID.657. The Court will therefore consider prior incidents, to the extent relevant, as background evidence.

### A. Plaintiffs' Title VII Retaliation Claims Against MDHHS

Title VII prohibits employers from retaliating "against any . . . employee[ ] . . . because [that individual] has opposed any practice" made

unlawful by Title VII. 42 U.S.C. § 2000e–3(a). To establish a prima facie claim of retaliation, plaintiffs must show: (1) they engaged in a protected activity; (2) defendants knew of the protected activity; (3) defendants took an adverse employment action against them; and (4) there is a causal link between the protected activity and the adverse employment action. *Ladd v. Grand Trunk W.R.R.*, 552 F.3d 495, 502 (6th Cir. 2009). If plaintiffs establish a prima facie case, the burden shifts to defendants to articulate legitimate, non-retaliatory reasons for their action. *Id.* Once defendants articulate their non-retaliatory reasons, plaintiffs must then come forward with evidence to show that those reasons are pretextual. *Id.*

Title VII recognizes two types of protected activity. First, under the opposition clause, employers cannot retaliate when an employee has "opposed any practice made an unlawful employment practice under [Title VII]." 42 U.S.C. § 2000e-3(a). Second, under the participation clause, employers cannot retaliate when an employee has "participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Id.*

To engage in opposition activity, plaintiffs must establish that they challenged an employment practice they reasonably believed was unlawful under Title VII. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir.

Page **12** of **22**

2000). "Of critical import here is the fact that there is no qualification on who the individual doing the complaining may be or on the party to whom the complaint is made known . . . ; the alleged discriminatory acts need not be actually illegal in order for the opposition clause to apply; and the person claiming retaliation need not be the person engaging in the opposing conduct." *Id.*

Here, plaintiffs allege in their March 3, 2021 EEOC charges that they were discharged due to their race and suffered retaliation for their prior complaints of discrimination. ECF No. 13-3, PageID.96-97; ECF No. 13-2, PageID.93-94. Plaintiffs both sent emails to CFP leadership with allegations of discriminatory employment practices. Harrison's emails to CFP leadership and to Governor Whitmer complained about what he believed were instances of disparate treatment he suffered as compared to other white male employees. Woolfolk's emails to CFP leadership complained about the discriminatory way she believed Harrison was being disciplined, the systemic racism and implicit bias she experienced while employed at CFP, and she questioned whether hiring, promotion practices, and other conditions of employment were being conducted in accordance with Title VII. The Court finds there is sufficient evidence that these

complaints fall under the first type of protected activity—the opposition clause.

Defendants do not dispute that they knew about these emails, nor that they terminated plaintiffs' employment, which constitutes an adverse employment action, thus satisfying the second and third elements of a prima facie retaliation claim. The only issue left to resolve is whether there is a causal connection between the terminations and the protected activity.

To satisfy the causation prong, plaintiffs' claims "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). To establish a causal connection, plaintiffs must proffer evidence sufficient to raise the inference that their protected activity was the likely reason for the adverse action. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). For temporal proximity to qualify as a causal connection, however, the time between the employer's knowledge of the protected activity and the adverse personnel action must be very brief. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that a three- or four-month period between an

adverse action and protected activity is insufficient to show a causal connection, and that a 20-month period suggests "no causality at all"). If "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 675 (6th Cir. 2013) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).

Drawing all reasonable inferences in the plaintiff's favor, Harrison has produced evidence of temporal proximity and other evidence of retaliation. He sent the complaints on September 1, 2020, and he was dismissed on October 6, 2020. That span—just over a month—supports an inference of causation. *See Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 427 (6th Cir. 2021) (finding a one- to two-month time lapse between the protected activities and the adverse actions "suffices to establish a genuine issue as to causation."). MDHHS is correct that Harrison had already been suspended before September 1 and the investigation was underway, which weakens his argument as to temporal proximity alone. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 507 (6th Cir. 2014) (quoting *Clark Cnty.*

*Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)). But it does not eliminate the issue, because the termination decision had not yet been made, and the record permits an inference that events after the September 1 complaints influenced the pace and course of the disciplinary process.

For Woolfolk, temporal proximity alone is weaker. She complained on September 1, 2020, and she was dismissed on December 14, 2020. That interval, standing alone, is a weak indicium of causation. *See Kenney v. Aspen Technologies, Inc.*, 965 F.3d 443, 449 (6th Cir. 2020) ("[A] roughly 75-day delay between her protected activity and an adverse employment action is not, standing alone, a convincing case for proving causation."); *but see Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (holding that an interval of three months was sufficient). But there is additional evidence from which a jury could infer retaliation, including evidence that "[a]t least 3 staff witnessed the event and did not report," leaving them vulnerable to the same ORR charge. ECF No. 59-20, PageID.2959. Taken together, this evidence is enough to create a genuine dispute on causation. In sum, drawing all reasonable inferences in plaintiffs' favor, the Court finds there is a genuine dispute of material fact regarding

Page **16** of 22

whether there is a causal connection between the adverse actions and the protected activity.

MDHHS has articulated legitimate, nonretaliatory reasons for the dismissals. Harrison was terminated after ORR concluded that his conduct constituted Abuse I. Woolfolk was terminated after ORR concluded that she committed Neglect I by failing to fully report the incident. But plaintiffs have produced enough evidence for a jury to question whether those reasons were the real reasons.

As to Harrison, the record contains a conspicuous inconsistency in the ORR materials. ORR classified the conduct as Abuse I, which turned on serious physical harm, yet the findings section stated that Harrison caused or contributed to "nonserious physical harm." ECF No. 56-17, PageID.1628, 1641. Then, after Harrison had already been dismissed, Human Resources issued a memorandum stating that the Director's Summary Report had been amended, "due to a typing error," to change "non-serious physical harm" to "serious physical harm." ECF No. 56-22, PageID.2022. A reasonable jury could regard that sequence as evidence of post hoc revision rather than mere clerical correction.

The record would also permit a finding of pretext as to Woolfolk. She submitted an incident report, yet she was fired for "failure to report" while other witnesses who did not submit an incident report were apparently not disciplined at all. The record contains evidence that management knew multiple staff members had witnessed the incident without reporting it. ECF No. 59-20, PageID.2959. A jury could find that MDHHS singled Woolfolk out.

This is not to say plaintiffs must prevail. It is only to say that a reasonable jury, drawing the inferences available on this record, could find that retaliation was a but-for cause of the dismissals and that MDHHS's articulated legitimate, nonretaliatory reasons for dismissal were pretext. Summary judgment is therefore inappropriate on plaintiffs' Title VII retaliation claims against MDHHS.

### B. Harrison's ELCRA Retaliation Claim Against Broadnax

Harrison also claims that defendant Broadnax reported him to the Michigan State Police in retaliation for protected activity. But Harrison has not supplied evidence to support the causation element to establish a prima facie retaliation claim. Although Harrison testified that Broadnax told him to stop complaining about discrimination, he fails to supply evidence as to

what protected activity Broadnax knew about, when Broadnax learned of it, or how that knowledge related to the decision to report the August 23 incident. ECF No. 56-2, PageID.986, 309:20-310:17, 312:24-313:5.

Just as important, Harrison does not meaningfully rebut Broadnax's evidence that Broadnax reported the matter because doing so was his assigned role under policy. ECF No. 56, PageID.648, ¶ 22. The Court finds that, on this record, no reasonable jury could find the required causal connection between Harrison's protected activity and Broadnax's report to law enforcement. Broadnax is therefore entitled to summary judgment on Harrison's ELCRA retaliation claim.

### C. Harrison's Title VII Race Discrimination Claim Against MDHHS

In the absence of direct evidence, a discrimination claim proceeds under the *McDonnell Douglas* burden-shifting framework. *Lyons v. Mich. Dep't of Corrs.*, 812 F. App'x 305, 308 (6th Cir. 2020). To establish a prima facie case, Harrison must show that he is a member of a protected class, was qualified for his job, suffered an adverse employment action, and was treated differently than a similarly situated employee outside the protected class. *Id.* (citing *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)). To meet the similarity requirement at the prima facie stage, "the

individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 893 (6th Cir. 2020) (citation omitted). While the plaintiff need not "show an exact correlation between themselves and others similarly situated," the "plaintiff must show that [he] is similar to [his] proposed comparator in 'all relevant respects.'" *Id.* (citation omitted). Harrison relies on one comparator: Darrin Anderson, a white FSA.

Harrison has some evidence that he and Anderson held the same job and were subject to overlapping supervisory authority. ECF No. 59, PageID.2672. But even assuming that suffices on the supervisor point, the comparator evidence fails where it matters most: the comparable seriousness of the conduct. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992) (quoting *Lanear v. Safeway Grocery,* 843 F.2d 298, 301 (8th Cir. 1988)).

The parties have submitted video evidence of both the incident involving Harrison and S.B. and the incident between Anderson and

another patient, which Harrison argues is comparable. ECF No. 56-16, PageID.1626; ECF No. 61-2, PageID.3056. In Harrison's encounter, the video shows that, immediately after S.B. spit at him, Harrison charged toward the patient, wrapped his arms around him, and drove him to the floor with enough force to knock off the patient's shoes. ECF No. 56-16 at 00:54-1:01. In Anderson's encounter, the video shows a patient trying to physically force his way past Anderson. ECF No. 61-2 at 1:02-1:11. Anderson grabs the patient around the waist, resists the patient's forward motion, and then brings the patient down in a visibly more controlled manner. *Id.*

No reasonable jury viewing the two videos side by side could conclude that the two restraint events displayed the same FSA conduct. Anderson faced a patient attempting to physically push past him into a restricted area and he used visibly less force in taking the patient to the ground. Harrison, by contrast, used substantially greater force in response to spitting and verbal provocation. In short, the videos do not support an inference that Harrison and Anderson "engaged in the same conduct without differentiating or mitigating circumstances" to distinguish the conduct or the employer's treatment of it. *Miles*, 946 F.3d at 893.

Accordingly, because Harrison has not shown that Anderson was a proper comparator in all relevant respects, he has not established a prima facie case of disparate treatment. MDHHS is therefore entitled to summary judgment on Harrison's Title VII race discrimination claim.

## IV.   Conclusion

For these reasons, defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. ECF No. 56. The motion is **DENIED** as to plaintiffs' Title VII retaliation claims against MDHHS and these claims will proceed to trial. The motion is **GRANTED** as to Harrison's ELCRA retaliation claim against Broadnax and Harrison's Title VII race discrimination claim against MDHHS and these claims are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

<u>s/Shalina D. Kumar</u>
SHALINA D. KUMAR
Dated: April 17, 2026                    United States District Judge